AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

FILED

for the

Western District of Oklahoma

MAR 14 2019

CARMELITA REEDER SHIN
CLERK, U.S. DISTRICT COURT
BY_____
DEPUTY



| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. M-19- 131 -P |
| The cellular telephone assigned call number (405) 816-8359, that is stored at premises controlled by Sprint | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | | *Offense Description* |
|---|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery | |

The application is based on these facts:

See Affidavit, attached hereto

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Charles W. Thumann, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __3/14/19__

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

GARY M. PURCELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A
### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(405) 816-8359** ("the Account"), that are stored at premises controlled by **SPRINT** ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.



## ATTACHMENT B
### Particular Things to be Seized

## I.  Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from **January 5, 2019**, to **February 6, 2019**:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile

1



Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2113(a) involving Lyndee Dressler during the period from **January 5, 2019**, to **February 6, 2019**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney



support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.



IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(405) 816-8359**, THAT IS STORED AT PREMISES CONTROLLED BY **SPRINT** | Case No. **MJ-_____-P**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Charles W. Thumann, being first duly sworn, hereby depose and

state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search

warrant for information associated with a certain cellular telephone assigned

call number **(405) 816-8359**, ("the **SUBJECT PHONE**"), that is stored at

premises controlled by **SPRINT**, a wireless telephone service provider

headquartered at **6480 Sprint Parkway, Overland Park, Kansas 66251**.

The information to be searched is described in the following paragraphs and

in **Attachment A**.  This affidavit is made in support of an application for a

search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **SPRINT** to

disclose to the government copies of the information further described in

Section I of **Attachment B**.  Upon receipt of the information described in

Section I of **Attachment B**, government-authorized persons will review the information to locate items described in Section II of **Attachment B**.

2.      I am a Special Agent with the FBI, and have been since July 2004.   During the past 14 years, I have conducted a wide variety of investigations, including numerous bank robbery investigations.  On multiple occasions, I have used telephone location information as part of my investigations.   Telephone location information helps law enforcement determine where a particular person (or at least their cell phone) was at a particular time—highly useful information in corroborating other aspects of the investigation.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that Lyndee Dressler (DOB: XX-XX-1986 / SSN: XXX-XX-2369) (**"DRESSLER"**), who uses the **SUBJECT PHONE**, has been involved in a bank robbery, in violation of 18 U.S.C. § 2113(a).  There is also probable cause to search the information described in **Attachment A** for evidence of this crime as further described in **Attachment B**.

2

## PROBABLE CAUSE

5.     The Federal Bureau of Investigation (FBI) and the Noble Police
Department (NPD) are investigating a bank robbery that occurred in Noble,
Oklahoma, on February 4, 2019.  On that date, at approximately 2:45 p.m., a
bank robber entered the Republic Bank & Trust branch located at 805 North
Main, Noble, Oklahoma 73068.  The bank robber approached a bank teller
(Teller #1) and presented a note demanding money.  The note, written on the
back of an empty envelope in red ink, stated, "This is a Robbery.  I'm sorry
Quietly Put the money in the folder Do Not Panic I have a gun look on my
waist.  I need at least 10,000.  Don't tell anyone or I'll have to shoot.  I'm
sorry.  Thank you."  In response, Teller #1 removed approximately $4,821.00
cash from the teller drawer and placed the money into a folder carried by the
robber.

6.     The bank robber then exited the bank's front door with the
money, leaving the demand note inside the bank.  Teller #1 and a second
teller (Teller #2) described the robber as a white male, approximately 145
pounds and 5'9" to 5'11" tall, with a dark complexion.  Teller #2 thought the
robber may have been Hispanic based on the robber's complexion.  Based on
information provided by witnesses and review of bank surveillance footage, it
was determined that the robber was wearing a tan-gray jacket with an OU
logo or insignia on the chest and a black "do rag" underneath a black or tan

3

ball cap.  The robber carried a brown or tan-colored accordion-style folder.
Teller #1 stated, and video surveillance of the bank's parking lot showed, that
the robber drove away in a white, two-door car.  Surveillance footage also
showed that the vehicle had a sunroof.  At the time of the robbery, the
Federal Deposit Insurance Corporation (FDIC) insured the Republic Bank &
Trust's accounts.

7.    On Thursday, February 7, 2019, the Noble Police Department
(NPD) found an abandoned Acura Integra, bearing Oklahoma license plate
number EBB-854, at Noble Health Care Center, 1501 N. 8th St., Noble,
Oklahoma 73068.  The vehicle was parked in the grass on the north side of
the facility.  The vehicle matched the physical description of the vehicle used
during the bank robbery, and through the partially open driver's side
window, law enforcement observed clothing that matched the clothing of the
bank robber.  There was a tan-colored jacket on the floor of the front
passenger seat, as well as a black "do rag" and black ball cap sitting on the
passenger seat.  A database search regarding the vehicle's license plate
confirmed that the car was stolen from a Gold's Gym located at 2117 NW
23rd Street in Oklahoma City, Oklahoma, on the morning of February 4,
2019.  The Acura Integra was thereafter searched.  When the jacket was
secured, agents observed an OU logo on the front left chest, consistent with
the jacket worn during the Republic Bank & Trust robbery.  Inside the

jacket's coat pocket, law enforcement found a form titled, "Early Warning Signs for Substance Abuse and Mental Illness Relapse," with the name "Stormy Jones" handwritten in the form's top right corner. Underneath the coat was an empty envelope, the back of which contained a note, written in red ink, stating, "Put the Money in the folder At least 10,-15,000 Please. I do Not want to Hurt anyone. I do Have a gun." Based on my training and experience, I believe this note was a practice demand note for a potential bank robbery. The handwriting and ink color of the practice note were consistent with the demand note used in the Republic Bank & Trust robbery.

8.    Following the search of the vehicle, the FBI interviewed Martha Rodriguez ("RODRIGUEZ"), who had reported the Acura Integra stolen on February 4, 2019, at approximately 6:20 a.m.[1] Both RODRIGUEZ, who works at the Gold's Gym where the car was stolen, and another gym employee described a suspicious female who briefly visited the gym during the time when the vehicle was stolen, noting that she was approximately 5'9" to 5'10" with shoulder-length brown hair and a medium build.

9.    That same day, February 7, 2019, law enforcement searched the Oklahoma Supreme Court Network (OSCN) for the name "Stormy Jones."

---

[1]    RODRIGUEZ, who does not speak good English, reported the vehicle stolen through her daughter, Martha Ramirez.

OSCN listed "Stormy Clay Jones" as living in Norman, Oklahoma, and in a mental health treatment program related to drug use. Law enforcement tried to interview Stormy Clay Jones ("STORMY") at 1316 Northcliff Ave., Norman, Oklahoma 73071. Rebecca Jones ("REBECCA") stated that her son, STORMY, was currently and had been incarcerated at the Cleveland County Jail for the past month and a half. When agents showed REBECCA pictures of the gray and tan jacket with the OU logo and the black ball cap, REBECCA stated that both the jacket and ball cap belonged to STORMY. REBECCA explained that STORMY often stayed down the street at 1226 Northcliff Ave., Norman, Oklahoma 73071, and that STORMY kept most of his clothing at that location.

10.    Following the conversation with REBECCA, agents traveled to 1226 Northcliff Ave., Norman, Oklahoma 73071, where they interviewed three individuals. Each individual was shown a picture of the gray and tan jacket with the OU logo on the front and a picture of the black ball cap. All three individuals identified the jacket as belonging to STORMY, but were unsure who owned the black ball cap. The agents conducting the interview noticed that the sole female present, **DRESSLER**, closely resembled the physical description of the suspicious female who visited Gold's Gym on the morning of February 4, 2019—the day the Acura Integra was stolen.

11.    On Saturday, February 9, 2019, law enforcement re-interviewed **DRESSLER,** who then admitted to stealing the Acura Integra on February 4, 2019, from Gold's Gym.  **DRESSLER** told law enforcement that she stole the car at the direction of Robert Cole ("COLE"), whom she also stated was the individual who orchestrated the bank robbery.

12.    On Wednesday, February 20, 2019, **DRESSLER** contacted law enforcement and stated Ronald Snowden ("SNOWDEN") was the bank robber.   **DRESSLER** explained she was not truthful with all of the information she initially provided to the FBI about COLE because she was living with SNOWDEN at the time she was interviewed by law enforcement. **DRESSLER** said COLE had nothing to do with the bank robbery on February 4, 2019.   **DRESSLER** stated SNOWDEN robbed the bank and could be located at 1226 Northcliff Ave., Norman, Oklahoma 73071.

13.    On Saturday, February 23, 2019, **DRESSLER** was arrested by the Norman Police Department and charged with robbery or attempted robbery with a dangerous weapon and possession of a firearm after conviction of a felony for attempting to rob a Dollar General store located at 800 N. Berry Road, Norman, Oklahoma 73069.   The Norman Police Department found seven cell phones located inside **DRESSLER's** vehicle.

14.    On Thursday, February 28, 2019, law enforcement interviewed **DRESSLER** at the Cleveland County Jail in Norman, Oklahoma.   After

being advised of her Miranda Rights, **DRESSLER** stated, in relation to the Republic Bank & Trust robbery, "If I tell you who did it then I'm fu\*\*ed." **DRESSLER** also stated SNOWDEN did not rob the bank and explained that she made that statement to law enforcement because she was upset with SNOWDEN at the time.   When asked about being in the Noble area on the day of the bank robbery, February 4, 2019, **DRESSLER** admitted that her truck was in Noble, Oklahoma on this day.

15.   On Tuesday, March 5, 2019, law enforcement interviewed "J.G." at her residence in Norman, Oklahoma.   J.G. first met **DRESSLER** on Wednesday, February 6, 2019, while staying at Motel 6 located at 1016 26th Ave. NW, Norman, Oklahoma 73069.   J.G. stated the room she rented was in her friend's name because her wallet was recently stolen.   Her room was in the name of Caleb Nash ("NASH").   During their initial encounter, **DRESSLER** and J.G. realized they had a mutual friend.   **DRESSLER** then made several statements regarding a bank robbery that occurred a few days earlier in Noble, Oklahoma.   According to J.G., **DRESSLER** showed her publically available photographs of the bank robber using her cell phone and asked her if the bank robber looked like a man.   **DRESSLER** then admitted to J.G. that she robbed the bank and wore a mustache or something else to appear like a man.   **DRESSLER** told J.G. that she went into the bank and presented a note to the bank teller.   According to J.G., **DRESSLER** told the

bank teller, "I'm sorry" and, "God forgive me for this." J.G. said that she and **DRESSLER** had been staying at the Motel 6 for a few days prior to the initial encounter on February 6, 2019.

16. That same day, March 5, 2019, law enforcement again interviewed SNOWDEN. SNOWDEN admitted that he drove **DRESSLER** to Oklahoma City on the morning of February 4, 2019. While in Oklahoma City on February 4, 2019, SNOWDEN stated **DRESSLER** needed to use a bathroom and proceeded to go into a Gold's Gym. **DRESSLER** then left the gym and stole a white Acura Integra car. **DRESSLER** and SNOWDEN drove both vehicles back to 1226 Northcliff Ave., Norman, Oklahoma 73071, where they were both staying at the time.

17. According to SNOWDEN, later in the morning on Monday, February 4, 2019, he followed **DRESSLER** to Noble, Oklahoma, because she told him she needed to "get some money". SNOWDEN drove **DRESSLER's** white Dodge Durango SUV. **DRESSLER** drove the Acura Integra car she just stole from Gold's Gym. SNOWDEN believed **DRESSLER** intended to rob a store, possible a grocery store but not a bank. **DRESSLER** had previously talked to SNOWDEN about robbing a store to get money. SNOWDEN stated that **DRESSLER** used makeup to create a fake goatee or facial hair on her chin and around her mouth. **DRESSLER** wore STORMY's

OU jacket, a pair of men's blue jeans, and had the fake goatee on her face when she drove the stolen Acura Integra to Noble, Oklahoma.

18.     SNOWDEN told law enforcement that he waited for **DRESSLER** in a parking lot of a building he described as a retirement center. SNOWDEN observed **DRESSLER** park the car in the grass area on the side of the retirement center.   **DRESSLER** left the clothing she wore during the robbery in the Acura Integra and abandoned the Acura Integra at the retirement center.   **DRESSLER** got into the Dodge Durango SNOWDEN was driving, took money out of a folder and stated something about all of the money being "1's".   **DRESSLER** then threw the folder out of the window of the Dodge Durango as SNOWDEN drove her back to Norman, Oklahoma. SNOWDEN stated that he then rented a room for a few nights at a Motel 6 in Norman, Oklahoma.   SNOWDEN used an Oklahoma driver license in the name of Timothy Pauley ("PAULEY") when he rented the hotel room for him and **DRESSLER**.

19.     On Tuesday, March 5, 2019, law enforcement interviewed employees at Motel 6 located at 1016 26th Ave. NW, Norman, Oklahoma 73069.   The employees provided law enforcement with documents that showed NASH rented room #310 from February 4, 2019, through February 6, 2019, and PAULEY rented room #309 from February 4, 2019, through February 6, 2019.   (According to SNOWDEN's statement, he rented room

#309 using PAULEY's identification, while J.G. said she was staying in the room under NASH's name.)

20.     Based on my training and experience, I submit there is probable cause to believe that **DRESSLER** was involved in the February 4, 2019 robbery of the Republic Bank & Trust located at 805 North Main, Noble, Oklahoma 73068, in violation of 18 U.S.C. § 2113(a).  Further, during the course of this investigation, law enforcement has been in regular contact with **DRESSLER** through the **SUBJECT PHONE**, thus confirming her use of the device.  Obtaining cell site information for the **SUBJECT PHONE** will assist law enforcement in confirming **DRESSLER's** involvement in this bank robbery by potentially placing her (or her phone) in the immediate vicinity of the bank during the robbery, thereby corroborating the information already obtained during this investigation.[2]

21.     In my training and experience, I have learned **SPRINT** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the

-----

[2]     The government is requesting cell site data for the thirty days prior to the bank robbery described above, as well as the two days after.  This additional information will be useful in establishing a pattern of life, which is necessary to establish anomalous behavior.  In my training and experience, getting the context of cell site data is necessary in order to better understand the significance of any one particular point of data.

cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

22.     Based on my training and experience, I know that **SPRINT** can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as **SPRINT** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23.     Based on my training and experience, I know that wireless providers such as **SPRINT** typically collect and retain information about their subscribers in their normal course of business. This information can

include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **SPRINT** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25.    I further request that the Court direct **SPRINT** to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on **SPRINT**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.   These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Charles W. Thumann
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on March __14th__, 2019.

GARY M. PURCELL
United States Magistrate Judge
Western District of Oklahoma

14

## ATTACHMENT A
### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(405) 816-8359** ("the Account"), that are stored at premises controlled by **SPRINT** ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.



**ATTACHMENT B**
**Particular Things to be Seized**

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from **January 5, 2019**, to **February 6, 2019**:

    a.  The following information about the customers or subscribers of the Account:

        i.   Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

       iii. Local and long distance telephone connection records;

       iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

       v.   Length of service (including start date) and types of service utilized;

       vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile

Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2113(a) involving Lyndee Dressler during the period from **January 5, 2019**, to **February 6, 2019**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney

support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

